**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as** *Columbus Bar Assn. v. LaFayette,* **Slip Opinion No. 2017-Ohio-9205.]**

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2017-OHIO-9205

COLUMBUS BAR ASSOCIATION *v.* LAFAYETTE.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Columbus Bar Assn. v. LaFayette,* Slip Opinion No. 2017-Ohio-9205.]**

*Failure to provide competent representation—Failure to act diligently—Failure to inform client of lack of liability insurance—Six-month suspension stayed on condition.*

(No. 2015-2010—Submitted August 29, 2017—Decided December 28, 2017.)

ON CERTIFIED REPORT by the Board of Professional Conduct of the Supreme Court, No. 2015-052.

_____

**Per Curiam.**

{¶ 1} Respondent, Eric Lee LaFayette, of Gahanna, Ohio, Attorney Registration No. 0077662, was admitted to the practice of law in Ohio in 2004. The Board of Professional Conduct recommends that we suspend him from the practice

of law for six months, with the entire suspension stayed. For the reasons explained below, we adopt the board's recommended sanction.

**Procedural Background**

{¶ 2} In 2015, relator, Columbus Bar Association, charged LaFayette with professional misconduct for, among other things, failing to provide competent representation in two client matters and, in one of those cases, filing court documents on which he had forged his client's signature. The parties initially entered into a consent-to-discipline agreement recommending that we sanction LaFayette with a conditionally stayed one-year suspension. Although the board accepted the agreement, we rejected the recommended sanction and remanded to the board for further proceedings, including consideration of a more severe sanction. *Columbus Bar Assn. v. LaFayette*, 146 Ohio St.3d 1485, 2016-Ohio-5529, 57 N.E.3d 1166.

{¶ 3} On remand, relator amended its complaint and withdrew the allegation that LaFayette had filed forged court documents. LaFayette stipulated to most of the charged misconduct in the amended complaint, and after a hearing, the board issued a report finding that he engaged in the stipulated misconduct. In its report, the board noted that relator's additional investigation on remand resulted in a conclusion that LaFayette's conduct had not amounted to forgery. For that reason, the board recommended that we sanction him with a stayed six-month suspension—a lesser sanction than it had previously endorsed when approving the parties' consent-to-discipline agreement. The parties do not object to the board's report and recommendation.

**Misconduct**

{¶ 4} LaFayette is a solo practitioner in Franklin County, and this matter commenced after his mishandling of two separate client matters.

2

*Count One—the Rapalo Enamorado matter*

**{¶ 5}** According to the parties' stipulations, Abel Rapalo Enamorado, a Honduras citizen, entered the United States without authorization or documentation in 2000. In 2003, he married Martha Rapalo Enamorado, who is a United States citizen. In 2006, the couple retained LaFayette to help them legalize Abel's presence in the United States. At that time, LaFayette had not handled any similar immigration matters.

**{¶ 6}** In February 2006, LaFayette filed a petition seeking to have Abel classified as an alien relative of a United States citizen. Immigration authorities approved the petition in July 2006 and requested that Abel travel to Honduras for consulate processing. Abel, however, declined to return to Honduras. At that point, LaFayette was unsure of the next steps to take and essentially abandoned the alien-relative petition. In 2008, approval of that petition was canceled for lack of action.

**{¶ 7}** In the interim, LaFayette applied for a green card for Abel. Relator and LaFayette later stipulated, however, that because Abel had entered the United States without documentation, he was ineligible to apply for a green card. After Abel's application was denied, LaFayette filed a futile appeal, which was also rejected. LaFayette was later notified that Abel's green-card application could be processed overseas, but LaFayette failed to respond to the notice.

**{¶ 8}** In 2008, Abel and Martha asked LaFayette to file an application for temporary protected status. Relator and LaFayette later stipulated, however, that Abel did not meet the eligibility requirements for such status. Nevertheless, LaFayette filed the application, and in doing so, he mistakenly applied the eligibility standards for a citizen of El Salvador rather than Honduras. In 2010, Abel's request for temporary protected status was denied. At that point, immigration authorities commenced deportation proceedings against him. In lieu of deportation, Abel agreed to voluntarily leave the country. The parties stipulated, however, that LaFayette failed to file any requests for relief that Abel may have

been eligible to receive. After Abel departed, LaFayette filed another petition to classify Abel as an alien relative, which was granted in 2012. But by that point, Martha had decided to retain a different attorney, and she later filed a grievance against LaFayette.

{¶ 9} The parties stipulated and the board found that LaFayette's conduct in representing Abel and Martha Rapalo Enamorado before February 1, 2007, violated DR 6-101(A)(1) of the Code of Professional Responsibility (prohibiting a lawyer from handling a matter that he is not competent to handle without obtaining assistance from a lawyer who is competent to handle it)[1] and that his conduct after February 1, 2007, violated Prof.Cond.R. 1.1 (requiring a lawyer to provide competent representation to a client), 1.3 (requiring a lawyer to act with reasonable diligence in representing a client), and 3.1 (prohibiting a lawyer from bringing or defending a proceeding, or asserting or controverting an issue in a proceeding, that is unsupported by law or fact). In addition, the parties stipulated that LaFayette failed to notify his clients that his malpractice insurance lapsed in 2009. Accordingly, the board determined that he also violated Prof.Cond.R. 1.4(c) (requiring a lawyer to inform the client if the lawyer does not maintain professional liability insurance and obtain a signed acknowledgment of that notice from the client). We agree with the board's findings of misconduct.

*Count Two—the Coles-Morgan matter*

{¶ 10} In May 2013, Ryan Morgan retained LaFayette to file bankruptcy on behalf of his mother, Alpha Coles-Morgan, whose home was the subject of a foreclosure proceeding, with a sheriff's sale scheduled in nine days. LaFayette met with Coles-Morgan at his office, and although she signed the bankruptcy petition, she failed to sign other documents relevant to her case. LaFayette filed the bankruptcy petition a day before the scheduled sheriff's sale, but he failed to stop

---

[1] On February 1, 2007, the Rules of Professional Conduct superseded the Disciplinary Rules of the Code of Professional Responsibility.

4

the sale because he arrived at the sheriff's office after the property had been sold. The court in the foreclosure case later vacated the order confirming the sale after the plaintiff in that proceeding—not LaFayette—notified the court of Coles-Morgan's bankruptcy filing.

{¶ 11} The bankruptcy court notified LaFayette that his filings were incomplete and included erroneous information. LaFayette filed amended documents, but they did not include the appropriate signatures from his client. He also failed to appear on time for the first meeting of creditors. Although the bankruptcy court ultimately issued a discharge to Coles-Morgan, she filed a grievance based on LaFayette's representation of her.

{¶ 12} The parties stipulated and the board found that LaFayette failed to provide competent representation to Coles-Morgan, in violation of Prof.Cond.R. 1.1. In addition, the board found that because LaFayette failed to have Coles-Morgan sign a notice acknowledging that she was aware that he lacked malpractice insurance, he also violated Prof.Cond.R. 1.4(c). We adopt these findings of misconduct.

### Sanction

{¶ 13} When imposing sanctions for attorney misconduct, we consider several relevant factors, including the ethical duties that the lawyer violated, the aggravating and mitigating factors listed in Gov.Bar R. V(13), and the sanctions imposed in similar cases.

*Aggravating and mitigating factors*

{¶ 14} The board found one aggravating factor—that LaFayette engaged in multiple offenses. *See* Gov.Bar R. V(13)(B)(4). In mitigation, the board determined that he has no prior disciplinary record, lacked a dishonest or selfish motive, had a cooperative attitude toward the disciplinary proceedings, and submitted positive character evidence. *See* Gov.Bar R. V(13)(C)(1), (2), (4), and (5).

*Applicable precedent*

{¶ 15} To support its recommended sanction, the board cited several cases with sanctions ranging from a public reprimand to a stayed suspension for conduct similar to LaFayette's, including *Columbus Bar Assn. v. Bhatt*, 133 Ohio St.3d 131, 2012-Ohio-4230, 976 N.E.2d 870 (publicly reprimanding an attorney who neglected two client matters and failed to notify those clients that his malpractice insurance had lapsed; mitigating factors included the absence of prior discipline, lack of a dishonest or selfish motive, and cooperation in the disciplinary process); *Cleveland Metro. Bar Assn. v. Thomas*, 125 Ohio St.3d 24, 2010-Ohio-1031, 925 N.E.2d 959 (imposing a conditionally stayed six-month suspension on an attorney who filed a misleading document in a client's bankruptcy proceeding and neglected another client's case; mitigating factors included the absence of prior discipline and cooperation in the disciplinary process); *Cleveland Metro. Bar Assn. v. Sherman*, 126 Ohio St.3d 20, 2010-Ohio-2469, 929 N.E.2d 1061 (adopting the parties' consent-to-discipline agreement and imposing a nine-month stayed suspension on an attorney who neglected a client's matter, voluntarily dismissed that client's case without her knowledge, and failed to advise another client that he did not maintain malpractice insurance; mitigating factors included the absence of prior discipline, lack of a dishonest motive, and cooperation in the disciplinary process).

{¶ 16} Considering LaFayette's misconduct and the relevant mitigating and aggravating factors, we agree with the board that a stayed six-month suspension is consistent with our precedent. We therefore adopt the board's recommended sanction.

## Conclusion

{¶ 17} Eric Lee LaFayette is hereby suspended from the practice of law in Ohio for six months, with the entire suspension stayed on the condition that he commit no further misconduct. If LaFayette fails to comply with the condition of

the stay, the stay will be lifted, and he will serve the entire six-month suspension. Costs are taxed to LaFayette.

Judgment accordingly.

O'CONNOR, C.J., and O'DONNELL, KENNEDY, FRENCH, O'NEILL, FISCHER, and DEWINE, JJ., concur.

_____

Lori J. Brown, Bar Counsel, and A. Alysha Clous, Assistant Bar Counsel; Bloomfield & Kempf and David S. Bloomfield; and Judith M. McInturff, for relator.

Eric Lee LaFayette, pro se.

_____